ORANGE COUNTY.—HON. R. C. COLEMAN, SURRO-
GATE.—May, 1884.

ESTERBROOK v. GARDNER.

*In the matter of the application for probate of papers
propounded as the will, and codicils thereto, of
ELIZABETH GARDNER, deceased.*

Testatrix, a widow, died in January, 1884, aged 79 years, having for
years lived happily in the family of her daughter, E., and leaving a
will executed in March, 1877, and two codicils executed respectively
in August, 1878, and May, 1879. Until December, 1878, she had ever
manifested more than ordinary strength of mind and resoluteness of
purpose, but after a severe attack of paralysis, suffered in that month,
she was much broken in health and memory. By the second codicil,
testatrix revoked the provisions which she had made in favor of E.,
and gave the share of the latter to testatrix's son, who had been fully
provided for by her husband's will, and, for that reason, omitted from
her own. Probate of the second codicil was disputed by E.

There was no evidence of undue influence, or of any change of feeling on
the part of testatrix towards E., or of the circumstances leading to or
attending the execution of the codicil, or of her having mentioned
either an intention to make such a change in her testamentary dis-
positions, or her having done so ; nor any controlling evidence of the
mental condition of testatrix at the time thereof. One subscribing
witness had died, and the other did not recollect the execution. It
did appear that, even after her attack, testatrix was possessed ordi-
narily of sufficient capacity to enable her to make a legal disposition
of her property ; while not unfrequently there were times when she
could not have done so, and her mind was so feeble that she might
have been easily influenced.—

*Held,* that, in view of the circumstances, including the unreasonable and
unnatural dispositions of the codicil in question, the latter could be
sustained only by affirmative evidence that it had been fairly made
by testatrix, of her own free will, and accorded with her testament-

ary intentions otherwise expressed ; and that, for the lack of such evidence, probate must be denied.

Mowry v. Silber, 2 *Bradf.*, 133—followed.

CONTEST over the admission to probate of a paper propounded as a codicil to decedent's will.   The facts appear sufficiently in the opinion.

GEO. H. CLARK, *for executor and petitioner.*

L. S. STERRIT, *for Theron Gardner and another.*

W. C. ANTHONY, *for Hannah Esterbrook, contestant.*

THE SURROGATE.—Mrs. Gardner, at the time of her death, was about 79 years of age.   She died in January, 1884.   On March 2nd, 1877, she made her will.   On August 3rd, 1878, she made a codicil to the will; and on May 6th, 1879, she made a second codicil.   In December, 1878, after making the first codicil and before making the second, Mrs. Gardner had a severe attack of paralysis. Before this time, although upwards of 70 years of age, she was a woman of more than ordinary strength of mind and resoluteness of purpose.   After the attack, she was broken in health, her memory badly affected, and her natural forces very much abated.

By the second codicil, Mrs. Gardner disinherited her daughter, Mrs. Esterbrook, and gave the portion, given her by the will, to her son, Theron F. Gardner, to whom she had given nothing by the will.   The probate of this codicil is contested by Mrs. Esterbrook.

There is lacking, in this case, any evidence of undue influence, imposition or artifice ; and we are left to determine the case, unembarrassed by many of the questions usually surrounding such cases.   But we are, on the other hand, unaided by any evidence as to the cir-

cumstances leading to, or attending the execution of the
second codicil; we have only the naked fact of its ex-
istence executed in due form of law.    So far as the tes-
timony shows, its existence was unknown to all her
children until after her death.    It appears to have been
executed at the law office of James W. Taylor, who was
employed by her to draw it, and who was one of the at-
testing witnesses.    He is now dead; his clerk, who en-
grossed it, and who was the other attesting witness,
evidently has no recollection of the circumstance.    Nor
is there any evidence of a change of feeling on the part
of Mrs. Gardner towards her daughter, Mrs. Esterbrook,
after the making of the will; on the contrary, she con-
tinued to make her home with the latter until her
death, as she had done ever since the death of her hus-
band—happily and contentedly, as I think, is clearly
established by the preponderance of evidence.    In fact,
there is an entire absence of any reason, so far as we
can judge, for making the change which, thus unex-
plained, is a most unexpected, unreasonable, and, under
the circumstances, most unnatural one for her to make.

The testatrix might, unbiassed by any improper in-
fluences, notwithstanding her age and infirmities, if she
possessed, at the time, sufficient mind to comprehend
her plans, the natural relations she bore to those with
whom she was connected, and the condition and amount
of her property, with memory sufficient to retain those
plans long enough to have them embodied in a will,
make such disposition as she desired of her property,
although such disposition was unreasonable or unnat-
ural.

But while such a disposition may be made, under

such circumstances, by a very feeble mind, it must have been the act of a sound mind, or it is not the proper act of the person making it.   So, if a person, in a moment of despondency, or at a time, when, from some local cause, such as an interference with the free working of the mind by the stoppage of a blood vessel in, or lesion of the brain, the understanding becomes perverted and unbalanced, does, even voluntarily, that which, in his right minded moments, he would not have done, the law will not give force to the act, and will protect him from it.

We have no direct evidence, as to the condition of Mrs. Gardner's mind at the time of the execution by her of the second codicil, which I consider at all controlling.

Mr. Sterrit testifies in a general manner, without any present recollection whatever on the subject, from his habit of testing people's minds, whose wills he is about to sign as a witness, that she was of sound mind at the time.

From the whole tenor of her conduct, I cannot believe that Mrs. Gardner ever realized that she had, at any time, executed a codicil by which she had disinherited the daughter with whom she lived happily, and from whom she expected shelter and protection, and had given the share, so taken away to one whom, when in a state of health, she considered to have been fully provided for by her husband's will, and had, for that reason, omitted from her own.   There is no evidence of her having mentioned to any one either an intention to make such a change in the disposition of her property, or that she had done so.

I am of opinion that Mrs. Gardner, even after she suffered from the attack of paralysis, was possessed, ordinarily of sufficient testamentary capacity to have made a legal disposition of her property ; but, from the testimony, I must also conclude that there were, not infrequently, times when her mind was in such a condition, that she could not have done so ; and that, during nearly the whole of that period, her mind was so feeble that she could have been most easily influenced by any person in whom she reposed confidence.   Under these circumstances, it has been held that, to sustain a testamentary disposition, it should be affirmatively proved to have been fairly made, to have emanated from the testator of his own free will and to have accorded with his   testamentary   intentions,   otherwise expressed (Mowry v. Silber, *2 Bradf., 133 ;* 1 Jarm. on Wills, *30*).

Now, however it may have been, whether this codicil was executed by Mrs. Gardner while in a state of mental alienation, or. from some undue influence, I am satisfied that it was never her purpose or intention, while in a sound and disposing mind, to have made such an instrument, and therefore reject the whole from probate.

Decreed accordingly.